IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| David J. Kennedy, | ) | C/A No. 0:12-1847-RMG-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| South Carolina Department of Corrections; | ) | |
| Victoria O. Balogun; and Amy R. Enloe, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, David J. Kennedy ("Kennedy"), a state inmate who is represented by counsel, filed this civil action[1] against the named defendants.[2] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 38.) Kennedy filed a response in opposition (ECF No. 40), and the defendants replied (ECF No. 41). Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

**BACKGROUND**

The following facts are undisputed unless otherwise indicated and, where disputed, are taken in the light most favorable to Kennedy. During the events at issue in the Complaint, Kennedy was housed at the Perry Correctional Institution ("Perry"), a facility of the South Carolina Department

---

[1] The defendants removed this action from the Anderson County Court of Common Pleas.

[2] As more fully detailed in the parties' stipulation filed August 9, 2012, the claims and parties remaining before the court are 42 U.S.C. § 1983 claims against Defendants Balogun and Enloe and state law claims of medical negligence against the South Carolina Department of Corrections pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10, et seq.

Page 1 of 15



of Corrections ("SCDC").  Kennedy was first seen by the medical staff at Perry[3] during sick call on May 25, 2010 for complaints of nausea and vomiting.  During his visit, Kennedy indicated that he had vomited four times since the previous evening.  Kennedy's examination notes state that bowel sounds were present and that Kennedy did not suffer from diarrhea.  Kennedy was instructed to remain on clear liquids for the rest of the day, was given a dose of Phernergan and three additional doses to be taken over the next twenty-four hours, and was instructed to follow up with the medical department the next morning if his vomiting had not stopped.

The next afternoon, May 26, 2010, Kennedy returned to the medical department with continued complaints of vomiting and severe left lower abdominal pain.  Defendant Balogun's medical encounter record indicates that Kennedy was "bending, with facial grimacing" and complained of pain all over his abdomen to his "private part."  Kennedy further informed Balogun that he had been on a clear liquid diet, that he had not urinated in two days, and that he had not had a bowel movement in three days except for a watery stool after taking Epson salt the previous night for his constipation.  Kennedy requested a laxative.  Balogun advised Kennedy to drink fluids, but Kennedy complained that he could not swallow and that he was dehydrated.  Balogun noted that Kennedy's abdomen was soft and not distended but was tender and, per Defendant Enloe's instruction, gave Kennedy a shot of Phenergan.  Kennedy was also given an initial dose of Tylenol,

---

[3] Kennedy's Complaint states that on May 25, 2010 he was seen by Nurse Burgess and Defendant Enloe; however, Kennedy's response in opposition to the defendant's motion for summary judgment indicates that, according to Kennedy's deposition testimony, Defendant Balogun was the first one to see him.  In further contrast, Defendant Enloe's affidavit states that, based on her review of Kennedy's medical records, Kennedy was evaluated by Nurse Ryan.  The medical records submitted to the court appear to indicate that on May 25, 2010, Kennedy was seen in the medical department at 12:02 p.m., with Nurse Ryan, Nurse Burgess, and Defendant Enloe signing off on the encounter at 12:11 p.m., 12:24 p.m., and 1:10 p.m., respectively.



which he swallowed, and was prescribed two doses a day for three days. According to the medical encounter notes, when asked by Balogun why he had not followed up with the medical department that morning, Kennedy said that had been fine that morning and did not need to come. Balogun placed Kennedy on a clear liquid diet for twenty-four hours and advised him to come to the medical department the next morning. Enloe signed off on the encounter the next morning at 7:34 a.m.

Kennedy presented to the medical department at 10:43 a.m. on May 27, 2010 in a wheelchair, complaining of nausea, vomiting, diarrhea, and abdominal cramping for the past three days. The encounter record notes that Kennedy was sluggish when changing positions and walking, that his abdomen was soft and not distended, that his bowel sounds were hypoactive, that no masses were palpable, and that his right and left lower quadrants were tender to palpation. Kennedy was also noted to have a fever of 99.4 degrees. Defendant Enloe directed that Kennedy be given a Phenergan shot and intravenous ("IV") fluids; however, Kennedy declined the shot of Phenergan and signed a "refusal of medical advice" form. Following his IV treatment, Kennedy's blood pressure and pulse was found to be within normal limits, and his color and skin turgor had improved. A report on Kennedy's condition was given to Dr. Benjamin Lewis, and Dr. Lewis directed that Kennedy be returned to his dormitory and be given a clear liquid diet for twenty-four hours and an oral dose of Phenergan. Defendant Enloe signed off on this encounter at 10:55 a.m.

According to Kennedy, Kennedy was incapacitated in his dormitory and was unable to leave for more sick-call visits over the next several days.[4] On May 31, 2010, the medical department received a call from a correctional officer that Kennedy was complaining of severe abdominal pain

---

[4] Kennedy provided this information in his deposition testimony. (See Kennedy Dep. 67:16-19, ECF No. 40-1 at 12.) However, it is unclear if he conveyed this information to the medical staff when he was seen next seen on May 31, 2010.



after eating junk food. Defendant Balogun instructed the correctional officer to give Kennedy Maalox and observe him further. At 3:11 p.m. that afternoon, the dormitory officer telephoned the medical department that Kennedy was "down in his dorm." Defendant Balogun directed the officer to bring Kennedy to the medical department via wheelchair. When Kennedy arrived, he complained of severe abdominal cramping all over his abdomen radiating to his private parts. The medical encounter notes that Kennedy reported he had eaten three burritos the day before. Kennedy later testified that he had no recollection of eating any solid food during the eleven days he was feeling poorly, but that it was possible that he had. Balogun observed that Kennedy exhibited facial grimacing, was squatting, appeared in distress, and was constantly telling the nurse to send him to the hospital because he needed medical attention. Balogun also noted that Kennedy's abdomen was soft and undistended, and that Kennedy later reported that his neck also hurt. No vital signs were obtained during this visit. Balogun contacted the SCDC on-call physician, Dr. Sadia Rafi, by telephone. Dr. Rafi prescribed Cipro and Flagyl and a laxative for constipation, and ordered Kennedy to continue with a clear liquid diet. Balogun advised Kennedy to take his medicine as directed and drink plenty of fluids, and that a follow-up appointment would be scheduled. Defendant Enloe signed off on this encounter the following morning on June 1, 2010.

Kennedy returned to the medical department four days later on June 4, 2010 in a wheelchair and complained to Defendant Enloe that he felt awful, that he had severe abdominal pain, that he had no appetite and could not drink much fluid due to feeling full, and that he was nauseated and felt feverish. Enloe noted that Kennedy appeared ill, that he had a temperature of 98.3 degrees and a pulse of 103, that his bowel sounds were hypoactive, that he had diffuse abdominal pain, and that



he had lost eleven pounds in two weeks. Enloe consulted with the SCDC on-call physician, Dr. Moore, who directed that Kennedy be given IV fluids and be sent to the emergency room.

Kennedy was admitted to the Greenville Memorial Hospital emergency room where a CT scan of Kennedy's abdomen revealed a high grade partial or complete small bowel obstruction and an extensive inflammatory process in the right lower quadrant. Kennedy underwent an exploratory laparotomy that revealed a perforated appendix resulting in intra-abdominal sepsis and small bowel obstruction. Kennedy underwent surgery and treatment and remained in the hospital until his release on June 19, 2010, when he was transferred to the infirmary at Kirkland Correctional Institutional. Kennedy was returned to Perry Correctional Institution on July 2, 2010.

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over



facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

**B.     Defendants' Motion for Summary Judgment**

    **1.     Official Capacity Claims**

To the extent that Kennedy is suing the Defendants Enloe and Balogun in their official capacities for monetary relief, they are entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, these defendants, who are all SCDC employees, are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that



capacity. See Will, 491 U.S. at 70-71. Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent these defendants are sued in their official capacities, they are immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

### 2.     Medical Claims under 42 U.S.C. § 1983

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII., including deliberate indifference to serious medical needs of prisoners, Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish a claim under the Eighth Amendment for deliberate indifference, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the medical context, an inmate "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104).

With regard to the objective prong, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). With regard to the subjective prong, a prison official



is deliberately indifferent if he has actual knowledge of and disregards "the risk posed by the serious medical needs of the inmate." Iko, 535 F.3d at 241 (citing Farmer, 511 U.S. at 837). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Kennedy has presented the following arguments with regard to his allegations of deliberate indifference to his medical needs. Specifically, he argues that material questions of fact exist as to whether Nurses Balogun and Enloe were aware of facts from which the inference could be drawn that Kennedy's condition posed a substantial risk of serious harm as of May 31, 2010—the date on which the plaintiff's expert witness, Dr. Jay B. Krasner, opines that Kennedy at a minimum was



suffering from acute appendicitis or, most likely, a perforated appendix, which are both life-threatening conditions. (Pl.'s Resp. Opp'n Summ. J., ECF No. 40 at 14.) In support, Kennedy points out that Balogun and Enloe had actual knowledge of Kennedy's deteriorating condition in that they had personally treated him or had signed off on his medical encounters during his course of treatment; and that despite his abdominal pain, nausea, vomiting, and other symptoms, Nurse Balogun did not take Kennedy's temperature—a crucial diagnostic measure at this time according to the plaintiff—and Nurse Enloe signed off on this encounter. Kennedy argues that material questions of fact exist as to whether Balogun and Enloe subjectively drew the inference that taking Kennedy's temperature on May 31, 2010 was a crucial diagnostic measure. The plaintiff's expert witness opines that the Enloe and Balogun "acted with deliberate indifference to . . . Kennedy's serious and life threatening medical needs by failure to secure adequate and appropriate medical care and discharging him back to his housing unit without an immediate consult with a qualified physician." (Krasner Aff., ECF No. 40-4 at 7.) Additionally, Kennedy argues that material questions of fact exist as to whether Balogun and Enloe subjectively drew the inference that Kennedy's condition required immediate transfer to an emergency room, relying on his expert witness's opinion that Kennedy's need for a higher level of care would have been "readily apparent" to a medical professional in that setting. (Krasner Dep. 72:6-15, ECF No. 40-3 at 8.)

    Assuming without deciding that the plaintiff can establish the objective prong by demonstrating that Kennedy's condition constituted a serious medical need, the defendants are nonetheless entitled to summary judgment, as no reasonable jury could find that the defendants were deliberately indifferent to Kennedy's medical needs such that the subjective prong is met. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v.



Peed, 195 F.3d 692, 695 (4th Cir. 1999). As stated above, to establish a claim under the Eighth Amendment for deliberate indifference to medical needs, Kennedy must establish that a defendant had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Kennedy must show that each defendant (1) had *actual* knowledge (2) of a *substantial* risk of *serious* harm to Kennedy and (3) that the defendant *disregarded* that substantial risk. Id. at 837; see also Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (stating that liability under this standard requires that the evidence show that the official in question: (1) "subjectively recognized a substantial risk of harm;" and (2) "subjectively recognized that his actions were inappropriate in light of that risk") (internal quotations omitted). Specifically, in the medical context, an inmate must show both actual knowledge on the part of the defendant of the risk of harm to the inmate and that the defendant "recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Iko, 535 F.3d at 241 (internal quotation marks and citation omitted). "It is not enough that [the defendants] *should have* recognized [a substantial risk of harm]; they actually must have perceived the risk." Parrish, 372 F.3d at 303 (emphasis in original). Likewise, "it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient." Id. (emphasis in original).

On the record presented, no reasonable jury could find that Defendants Balogun and Enloe had a sufficiently culpable state of mind such that they were deliberately indifferent to Kennedy's medical needs. It is undisputed that Kennedy was seen by the medical department on multiple occasions over the course of the approximately eleven-day period at issue. During those medical encounters, it is also undisputed that Kennedy was evaluated, received medication, and was given instructions for follow-up care if necessary, as summarized above. While Kennedy argues that certain



aspects of these medical encounters were flawed for various reasons, this is insufficient to prove that the defendants had the culpable state of mind necessary to rise to the level of deliberate indifference. See Farmer, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); Parrish, 372 F.3d at 307 ("If a negligent response were sufficient to show deliberate indifference, the Supreme Court's explicit decision in Farmer to incorporate the subjective recklessness standard of culpability from the criminal law would be effectively negated."); see also Dias v. Vose, 865 F. Supp. 53, 59 (D. Mass 1994) (finding that a physician's failure to send an inmate to the hospital, while possibly negligent, was not deliberate indifference to a serious medical need, even though the delay in appendicitis surgery caused complications, absent a showing that the physician acted with a culpable state of mind and intention to inflict pain), aff'd 50 F.3d 1 (1st Cir. 1995).

Kennedy focuses much of his deliberate indifference argument on Nurse Balogun's failure to take Kennedy's temperature when she treated him on May 31, 2010. At this point, Kennedy had been seen by the medical department on multiple occasions over the course of approximately seven days for complaints of abdominal pain and nausea. Kennedy appears to argue that Nurse Balogun's failure to take Kennedy's temperature during examination rose to the level of deliberate indifference in that this vital sign was a crucial diagnostic measure, considering the history and duration of his symptoms. Kennedy also applies this argument to Nurse Enloe, as she reviewed and signed off on the medical encounter the next day. Review of Nurse Balogun's medical encounter on May 31, 2010, as summarized above, reveals that Kennedy complained of severe abdominal cramping all over his abdomen radiating to his private parts and that Kennedy reported he had eaten three burritos the day



before. Balogun observed that Kennedy exhibited facial grimacing, was squatting, appeared in distress, that Kennedy's abdomen was soft and undistended, and that Kennedy later reported that his neck also hurt. Balogun contacted the SCDC on-call physician, Dr. Sadia Rafi, by telephone. Dr. Rafi prescribed Cipro and Flagyl and a laxative for constipation, and ordered Kennedy to continue with a clear liquid diet. Balogun advised Kennedy to take his medicine as directed and drink plenty of fluids, and that a follow-up appointment would be scheduled. Although this encounter does not reflect that Balogun obtained vital statistics from Kennedy, the law is clear that a defendant's response to a perceived risk must be more than merely negligent or simply unreasonable to rise to the level of deliberate indifference. See Parrish, 372 F.3d at 306-07.

The defendants also point to the medical records to demonstrate that no reasonable jury could find that Kennedy's need for a higher level of care would have been "readily apparent" to any medical professional. Specifically, the defendants point out that the medical records show that not one of the multiple medical professionals who treated Kennedy made the diagnoses at the times that Kennedy's expert witness opines these diagnoses were "readily apparent." These medical professionals included two SCDC physicians as well as the treating physicians during Kennedy's initial examination at the emergency department at Greenville Memorial Medical Center ("the hospital")—none of whom are defendants in this matter.[5] (See SCDC Medical Records, Encounter Nos. 161 & 164, ECF No. 38-3 at 4 & 3; Krasner Aff., ECF No. 40-4 at 5 (summarizing Kennedy's initial examination at the hospital

---

[5] The plaintiff appears to argue that Dr. Rafi's instructions to Nurse Balogun to continue Kennedy on a clear liquid diet on May 31, 2010 were made without knowledge of Kennedy's history of symptoms, and that Nurse Balogun did not convey the seriousness of Kennedy's condition to Dr. Rafi over the telephone. (Pl.'s Resp. Opp'n Summ. J., ECF No. 40 at 8.) The deposition excerpts provided to the court do not indicate, however, what information Dr. Rafi received from Nurse Balogun—only that, in a hypothetical situation, information provided to her would be left to the discretion of the nurse practitioner. (Rafi Dep. 47:2-8, ECF No. 40-5 at 4.)



that indicates possible partial small bowel obstruction)). In light of this evidence, no jury could reasonably find that the nurse defendants subjectively drew the inference that Kennedy's need for a higher level of care was "readily apparent" and deliberately did not provide that care to Kennedy.

To the extent that Kennedy's claims allege negligence or medical malpractice, they are not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Accordingly, in the absence of evidence as to all necessary prongs, the defendants are entitled to summary judgment.

## RECOMMENDATION

For the above reasons, the court recommends that the defendants' motion for summary judgment (ECF No. 38) be granted. In light of this recommendation, the court should decline to exercise supplemental jurisdiction over any state law claims alleged in Kennedy's Complaint. See 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction"). The court recommends that any state claims be remanded to state court pursuant to

28 U.S.C. § 1367(c)(3).  See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1996); Tigrett v. Rector & Visitors of the Univ. of Va., 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case).

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 5, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).