IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| David J. Kennedy, | ) | |
| | ) | No. 0:12-cv-1847-RMG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| South Carolina Department of Corrections, | ) | |
| Victoria O. Balogun, and Amy R. Enloe, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court on the Report and Recommendation ("R&R") of the Magistrate Judge recommending that the Court grant Defendants' motion for summary judgment. (Dkt. No. 47). For the reasons set forth below, the Court grants Defendants' motion for summary judgment. (Dkt. No. 38).

**Background**

Plaintiff, a state prisoner represented by counsel, brings this civil action asserting violations of 42 U.S.C. § 1983 and state law arising from his medical care while detained at Perry Correctional Institution. Plaintiff filed this action in the Anderson County Court of Common Pleas and the Defendants timely removed it to this Court. Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC, this matter was automatically referred to a United States Magistrate Judge for pretrial proceedings. Defendants then filed a motion for summary judgment asserting that Plaintiff's § 1983 claim for deliberate indifference to Plaintiff's serious medical needs should be dismissed and that all state law claims should be remanded to state court. (Dkt. No. 38). Plaintiff then filed a response opposing the motion, (Dkt. No. 40), and Defendants filed a reply, (Dkt. No. 41). The

Magistrate Judge then issued the present R&R. (Dkt. No. 47). Plaintiff then filed objections, (Dkt. No. 48), and Defendants filed a reply, (Dkt. No. 49).

## Legal Standards

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a de novo determination of those portions of the R&R to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.

*Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. *Wilson*, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Rather, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "[O]fficials evince deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care." *Bridges v. Keller*, 519 Fed. App'x 786, 787 (4th Cir. 2013) (internal citations omitted). "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).

## Discussion

Plaintiff originally filed this action in the Anderson County Court of Common Pleas and asserted claims of gross negligence against the South Carolina Department of Corrections under the South Carolina Tort Claims Act, S.C. Code § 15-78-10–220, and deliberate indifference to Plaintiff's known medical needs in violation of Plaintiff's rights under the Eighth Amendment of the United States Constitution and 42 U.S.C. § 1983 against Defendants Amy R. Enloe, a nurse practitioner, and Victoria O. Balogun, a registered nurse.[1] (Dkt. No. 1-1 at 10-11). Defendants removed the action to federal court on the basis of Plaintiff's assertion of the federal cause of action, and Defendants subsequently moved for summary judgment on this federal claim. (Dkt. Nos. 1, 38).

At all times relevant to this action, Plaintiff was incarcerated at Perry Correctional Institution and was rendered medical and nursing care during the period in question, May 25 to June 4, 2010, from a variety of licensed medical professionals at the prison's medical clinic, including a licensed practical nurse, two registered nurses, a nurse practitioner, and three medical doctors. Only Defendants Enloe and Balogun are named defendants in the § 1983 claim. It is important to note at the outset that these various health care providers operated within defined scopes of practice under South Carolina law and there is a hierarchy of authority, with medical doctors at the top of the treatment pyramid. Only medical doctors are authorized to engage in the "practice of medicine" and their orders and treatment plans must be implemented by lower level medical providers. S.C. Code § 40-47-20(36). Nurse practitioners are authorized to perform certain delegated medical acts

---

[1] The Complaint also named as Defendants Katherine W. Burgess, Dr. Sadia Rafi, and Dr. Benjamin F. Lewis, but Plaintiff subsequently dismissed these Defendants as parties to this action. (Dkt. No. 19).

pursuant to written protocols and under the supervision of a medical doctor. S.C. Code §§ 40-33-20(3), (5), (10); 40-47-20(13), (14); 40-47-195. Registered nurses have a more limited scope of practice than nurse practitioners, particularly in regard to the diagnosing of illnesses and the prescribing of medications. S.C. Code § 40-33-20(48).

Plaintiff's medical record indicates that he was first seen on May 25, 2010, by a licensed practical nurse, Madeline Ryan, at 12:02 hours with complaints of nausea and vomiting. (Dkt. No. 40-2 at 5). Plaintiff gave a history of having developed these symptoms after eating food provided by an outside vendor. Ms. Ryan documented checking the patient's bowel sounds and confirmed they were present. *Id.* She then implemented a standing order for the treatment of G.I. distress, which included ordering a liquid diet and providing the patient Phenergan, an anti-nausea medication. She also directed the inmate to follow up in the morning if the vomiting was continuing. (Dkt. Nos. 38-2 at 3; 40-2 at 5). This note was reviewed by a registered nurse, Katherine W. Burgess, at 12:24 hours and she indicated she would route the note to a physician or nurse practitioner for review. At 13:10 hours, Defendant Enloe, a nurse practitioner, documented her review of the note. (Dkt. No. 40-2 at 5).[2]

On the following day, May 26, 2010, the medical clinic received a call at 16:25 hours from a correctional officer that Plaintiff was throwing up and having lower abdominal pain. Defendant Balogun, a registered nurse, directed the officer to bring Plaintiff to the medical clinic. The inmate

---

[2] Plaintiff testified in his deposition that he thought the nurse who treated him in the medical clinic on May 25, 2010, was Defendant Balogun "if I'm not mistaken" and he was able to recall few details about this encounter. (Dkt. No. 40-1 at 4-5). The contemporaneously prepared medical records indicate Plaintiff was treated by Nurse Practitioner Ryan in this initial visit. (Dkt. No. 40-2 at 5). Regardless, no specific evidence of deliberate indifference by Defendant Balogun has been provided regarding Plaintiff's May 25, 2010 office visit.

arrived by wheel chair and complained of lower abdominal pain. (Dkt. No. 40-2 at 4). Nurse Balogun documented the patient appeared to be "bending, with facial grimacing." (*Id.*). Plaintiff reported he had not urinated or had a bowel movement for several days and thought he was dehydrated. (*Id.*). Nurse Balogun conducted a physical examination of the patient and noted that his abdomen was soft and non-distended but was tender. No vital signs were then recorded. Nurse Balogun asked Plaintiff why he had not returned that morning as instructed the prior day, and he indicated that he had felt fine that morning. (Dkt. No. 40-2 at 5). Nurse Balogun then ordered a shot of Phenergan and a clear liquid diet and authorized Plaintiff to receive multiple does of Tylenol over the next several days. Plaintiff was also directed by Nurse Balogun to return to the medical clinic in the morning for follow up. (*Id.*). Nurse Balogun signed off the note at 16:59 hours, thirty-four minutes after the encounter with Plaintiff began. *Id.*

This note was reviewed by Defendant Enloe, in her capacity as a nurse practitioner, the following morning, May 27, 2010, at 07:34 hours. Nurse Practitioner Enloe directed that the patient's vital signs be taken, and at 08:47 hours Nurse Burgess called Plaintiff's dorm to send the inmate to the medical clinic to get his vital signs taken. (*Id.*).

Plaintiff arrived at the medical clinic at 10:43 hours on May 27, 2010, and was evaluated by Nurse Burgess. Plaintiff arrived in a wheel chair and now complained of nausea, vomiting, diarrhea, and abdominal cramping. (*Id.* at 4). Plaintiff informed Nurse Burgess that his symptoms began after he had eaten something that had come from Hardees. Nurse Burgess conducted a physical examination of Plaintiff and noted that his skin turgor was delayed and his mucous membranes were dry, which were consistent with dehydration. (*Id.*). She also documented that he appeared "sluggish" but his abdomen remained soft and non-distended. (*Id.*). Plaintiff's bowel sounds were

noted to be hypoactive and his lower abdominal quadrants were tender to palpation. His vital signs indicated that he was tachycardic (elevated pulse of 120), had a slightly elevated temperature (99.4) and his blood pressure was hypotensive (90/60). (*Id.*).

The record documents that Nurse Burgess then consulted Nurse Practitioner Enloe. Defendant Enloe ordered IV saline to address suspected dehydration and Phenergan to address nausea. (*Id.*). Plaintiff refused the Phenergan and received the intravenous fluids administered by Nurse Burgess. Once the fluids were infused, Nurse Burgess documented that Plaintiff's blood pressure and pulse had returned to normal and his color and skin turgor had improved. (*Id.*). Nurse Burgess then documented that she gave a report of the case to Dr. Benjamin Lewis, a physician, who gave an order that the IV be discontinued, Plaintiff be returned to his dorm, and he be placed on a liquid diet for twenty-four hours. Nurse Burgess then documented that she implemented Dr. Lewis' orders. (*Id.*).

According to Plaintiff's medical record, no further complaints or reports were provided to the medical clinic until 10:18 hours on May 31, 2010, four days later, when a correctional officer called and stated that the inmate was having severe abdominal pain. (*Id.*). Nurse Balogun was informed by the correctional officer that the inmate had been eating junk food. (*Id.*). Nurse Balogun directed the correctional officer to provide Plaintiff Maalox and to observe him further. (*Id.*).

Later that same day, at 15:11 hours, the medical clinic was called again and told that Plaintiff was "down in his dorm." (*Id.* at 3). The officer was directed to bring the inmate to the medical clinic and he arrived shortly thereafter in a wheel chair. He was seen by Defendant Balogun and reported abdominal pain across the entire abdominal region and was noted to have facial grimacing and squatting. Defendant Balogun documented that Plaintiff "appeared in distress" and "constantly

telling the nurse to send him out to hospital because he needs medical attention." (*Id.*). Nurse Balogun examined Plaintiff and noted his abdomen remained soft and non-distended. (*Id.*).

Nurse Balogun documented that she then consulted a medical doctor, Dr. Sadia Rafi. Dr. Rafi ordered Plaintiff be placed on two antibiotics, Cipro and Flagyl, milk of magnesia for constipation, and an oral diet, with specific instructions to drink plenty of fluids. (*Id.*). Nurse Balogun also entered a request for further follow up for the patient, and Nurse Practitioner Enloe directed the following morning, June 1, 2010, at 06:44 hours, that a follow up appointment be given to Plaintiff that week. (*Id.*). The appointment was scheduled for June 2, 2010, but Plaintiff did not appear for his appointment. (*Id.*).

The medical clinic was next contacted about Plaintiff on June 4, 2010, at 10:43 hours when he arrived in a wheel chair complaining of severe abdominal pain. He was seen by Nurse Practitioner Enloe, who documented that the inmate "appears ill," had rebound tenderness, was "guarded" when she attempted to examined his abdomen, had lost eleven pounds in the last two weeks and felt feverish. Defendant Enloe consulted with a medical doctor, Dr. Moore, who ordered the inmate to be sent to the emergency room at Greenville Memorial Hospital for evaluation. (*Id.* at 2). Plaintiff was then transported to Greenville Memorial Hospital and was evaluated by an emergency room physician, who ordered a CT scan to evaluate the inmate's abdomen. The results of the CT scan demonstrated the presence of some acute process and Plaintiff underwent laparoscopic surgery, which then revealed the presence of a perforated appendix. (Dkt. No. 40-4 at 5).

While the record before this Court reflects a disagreement among medical experts concerning the course of treatment provided to Plaintiff in his various office visits in the prison's medical clinic

-8-

prior to his referral to Greenville Memorial Hospital on June 4, 2010, which may provide the basis for a state tort claim, the record fails to provide a basis upon which a reasonable jury could find that Nurse Balogun and Nurse Practitioner Enloe "evince[d] deliberate indifference . . . by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care." *Bridges v. Keller*, 519 Fed. App'x at 787. When Nurse Balogun first encountered Plaintiff on May 26, 2010, regarding his complaint of lower abdominal pain, she obviously listened to the inmate because she documented a history and then conducted a physical exam. (Dkt. No. 40-2 at 4). Based upon her findings, Nurse Balogun then provided Plaintiff medication to address his pain and nausea and she directed Plaintiff to return to the clinic the next day for follow up. (*Id.*). The record documents attention to Plaintiff's complaints and a treatment plan implemented by Nurse Balogun, not deliberate indifference to the patient's condition.

Nurse Balogun's May 26, 2010 note, completed at 16:59 hours, was reviewed the next morning at 07:34 hours by Nurse Practitioner Enloe, who noted that vital signs had not been taken at the office visit the next day. She ordered that this oversight be corrected and arrangements were made to bring the patient back to the medical clinic to document his vital signs. (*Id.*). This record documents Nurse Practitioner Enloe's careful attention to the treatment rendered to Plaintiff, not deliberate indifference to his suffering.

When Plaintiff returned on the morning of May 27, 2010, to have his vital signs checked, he was again assessed by Nurse Balogun, and findings consistent with dehydration were noted. Plaintiff's vital signs were taken and reflected some abnormalities in pulse, blood pressure, and temperature. (*Id.*). Nurse Balogun then consulted a higher skilled professional, Nurse Practitioner Enloe, who gave orders to address Plaintiff's dehydration and nausea. Nurse Balogun monitored this

treatment and documented that Plaintiff's skin color, pulse, and blood pressure improved with the receipt of IV fluids. (*Id.*). Despite this evidence of improvement in the patient's condition, she nonetheless consulted an even higher level of medical professional, Dr. Benjamin Lewis, who issued treatment orders for the patient that included having him return to his dorm. (*Id.*). Both Defendants Enloe and Balogun were documented being attentive to Plaintiff's condition during the May 27, 2010 office visit, and the ultimate disposition of Plaintiff's treatment was determined by Dr. Lewis and not the named Defendants. Defendants Enloe and Balogun were clearly not indifferent to Plaintiff's suffering and under South Carolina law had no authority to countermand the orders of a medical doctor.

Plaintiff had no documented contact with the prison medical clinic until May 31, 2010, when a correctional officer reported to Nurse Balogun that Plaintiff was having severe abdominal pain after eating junk food. (*Id.*). She directed the correctional officer provide Plaintiff Maalox and to observe him further. Later that day, when another officer informed the clinic that Plaintiff was "down in the dorm," Nurse Balogun directed that he be brought to the medical clinic, where she carefully documented his distress and desire for a hospital referral. (Dkt. No. 40-2 at 3). She conducted a physical examination and then consulted a higher medical authority, Dr. Sadia Rafi. Dr. Rafi then issued a plan of treatment, including two antibiotics, anti-diarrhea medication, and an oral diet. (*Id.*). Nurse Balogun implemented this order and supplemented it with a request that the patient be seen in follow up, which Nurse Practitioner Enloe received at 06:44 hours on June 1 and ordered an appointment for Plaintiff for June 2. (*Id.*). Again, Defendants Balogun and Enloe showed attention and concern for Plaintiff in regard to the May 31 encounter and the ultimate

-10-

treatment orders were issued by a medical doctor that the Defendants had no authority as lesser medical licensees to countermand.

Plaintiff returned to the medical clinic four days later, on June 4, 2010, and was seen by Defendant Enloe, who documented in some detail the patient's worsening condition. (Dkt. No. 40-2 at 2). Defendant Enloe consulted a higher authority, Dr. Moore, who ordered Plaintiff transferred to Greenville Memorial Hospital. Defendant Enloe began an IV for Plaintiff pending his transport to the hospital. (*Id.*). A work up was conducted at Greenville Memorial Hospital with the facility's far superior diagnostic resources but a definitive diagnoses still was not made until Plaintiff was taken to surgery. The record does not suggest any deliberate indifference in Plaintiff's treatment by Defendant Enloe during the June 4, 2010 encounter.

In sum, Plaintiff has failed to bring forth evidence, even when viewed in a light most favorable to Plaintiff as the non-moving party, upon which a reasonable jury could find that acts or omissions by Defendants Balogun or Enloe reflected a deliberate indifference to serious medical needs in their treatment of Plaintiff. *Estelle*, 429 U.S. at 104-06; *Bridges*, 519 Fed. App'x at 787. The record documents these Defendants' efforts to assess and treat Plaintiff's condition and to monitor the efficacy of the treatment provided. Indeed, the treatment plans actually adopted and implemented in the office encounters of May 27 and 31 and June 4, 2010, were issued by medical doctors, rather than these Defendants. In light of the foregoing, the Court hereby grants Defendant Enloe's and Balogun's motions for summary judgment in regard to the § 1983 claim.

Because the Court has dismissed Plaintiff's federal claim, only Plaintiff's state law claims remain. When a federal court dismisses the federal claim in an action and diversity does not exist, the Court may in its discretion choose not to exercise its supplemental jurisdiction and dismiss the

pendant state law claims. 28 U.S.C. § 1367(c)(3); *Clinton v. Cnty. of York*, 893 F. Supp. 581, 588 (D.S.C. 1995). The Court exercises its discretion here and dismisses the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

### Conclusion

For the reasons set forth above, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's 42 U.S.C. § 1983 claims with prejudice. (Dkt. No. 38). Plaintiff's remaining state law claims are remanded to the Anderson County Court of Common Pleas pursuant to 28 U.S.C. § 1367(c)(3).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

July 3, 2014
Charleston, South Carolina